Clifford **LAPKOFF, Plaintiff–Appellant,**

v.

**Kevin WILKS; Volvo Finance of North America, Defendants–Appellees,**

**and**

**Volvo of North America Corporation, Defendant.**

**No. 91–1859.**

United States Court of Appeals, Fourth Circuit.

Argued May 7, 1992.

Decided July 15, 1992.

As Amended July 21, 1992.

Daniel B. Edelman, Yablonski, Both & Edelman, Washington, D.C., argued (Gary H. Simpson, Simpson & Ehrich, Bethesda, Md., on brief), for plaintiff-appellant.

Robert L. Green, Jr., Howrey & Simon, Washington, D.C., argued (Ronald G. Haron, on brief), for defendants-appellees.

Before RUSSELL and HAMILTON, Circuit Judges, and WILLIAMS, Senior United States District Judge for the Western District of Virginia, sitting by designation.

OPINION

GLEN M. WILLIAMS, Senior District Judge:

This defamation suit arises from statements made by Defendant Kevin Wilks (Wilks), an employee of Defendant Volvo Finance of North America (Volvo Finance), regarding Plaintiff Clifford Lapkoff (Lapkoff). The district court granted summary judgment in favor of Defendants. Plaintiff appeals. We affirm.

I.

From October, 1988 through April, 1990 Lapkoff was an aggressive and effective sales manager at Anton Motors, Inc. (Anton Motors). At all relevant times, Wilks was the mid-Atlantic regional manager for Volvo Finance. Volvo Finance provides financing for purchasers of Volvo automobiles from Volvo dealerships, including Anton Motors.

Wilks became aware that a high percentage of Anton Motors' customers were delinquent on their loans. After an investigation by Volvo Finance's collections department, the problem was found to be with the customers referred by Fred Byrd (Byrd), a man in the business of helping those with marginal credit buy cars. Apparently, the credit applications submitted to Volvo Finance by Anton Motors for customers referred by Byrd contained false and misleading information. Wilks advised Lapkoff to cease dealing with Byrd and Lapkoff agreed.

Lapkoff contends that he later heard a rumor that Anton Motors' finance manager was altering credit applications but did not report it to his supervisor, nor did he report the conversation he had with Wilks about Byrd to his supervisor. Lapkoff subsequently fired a sales person after discovering the sales person had dealt with Byrd without Lapkoff's knowledge. Lapkoff indicated he later resigned from Anton Motors because he did not want to be involved in any illegal activity.

On September 4, 1990, Ronald Johnston (Johnston), general manager of Brown's Volvo and Subaru of Alexandria, Inc. (Brown's), hired Lapkoff as sales manager.

Wilks was also the principal contact between Volvo Finance and Brown's on matters of financing. During a routine sales call to Brown's, Johnston asked Wilks about Lapkoff. Wilks stated to Johnston that Lapkoff was good at his job of motivating salesmen and closing deals but that on a personal level he [Wilks] "wouldn't trust him [Lapkoff] any farther than [he] could throw him." Wilks also related to Johnston the problems at Anton Motors with fraudulent loan applications and something to the effect that if a manager condoned that type of situation, there was a problem, and if he was not aware of it, there was also a problem.

Johnston confronted Lapkoff about the trouble at Anton Motors. Lapkoff admitted that there had been a problem and that he had known about it. Lapkoff, however, stated that he had not been involved in any wrongdoing. Johnston testified that he fired Lapkoff because he "could not afford to have a man working at [his] dealership who had been general sales manager in a store where [those] things had been happening."

Lapkoff then filed suit against Wilks alleging defamation. The district court granted summary judgment in Wilks' favor. Relying on *Chaves v. Johnson*, 230 Va. 112, 335 S.E.2d 97 (1985), the district court held that Wilks' comment regarding Lapkoff's trustworthiness was clearly a matter of personal opinion and not actionable in defamation. The court also held that Wilks' second remark regarding the fraud problems at Anton Motors was an undisputed fact. The court further acknowledged that Wilks' statements made no direct accusation that Lapkoff committed fraud. The court also relied on *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990), to determine that Wilks' statements were protected opinions under the First Amendment rather than imputations that Lapkoff was in fact involved in or condoned fraudulent conduct. Plaintiff argues that the district court improperly resolved competing inferences in favor of Defendants and further challenges the district court's finding that Wilks'

statements were constitutionally protected expressions of opinion.

## II.

On appeal, we review *de novo* a district court's grant of summary judgment. *Higgins v. E.I. DuPont de Nemours & Co.*, 863 F.2d 1162, 1167 (4th Cir. 1988). The only question before the court is whether Wilks' comments are actionable in defamation. In Virginia, a tort action is governed by the law of the state in which the alleged wrong occurred. *McMillan v. McMillan*, 219 Va. 1127, 253 S.E.2d 662, 664 (1979) (refusing to abandon place-of-the-wrong test). Moreover, the Supreme Court in *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938), pronounced that "except in matters governed by the Federal Constitution or by Acts of Congress, the law to be applied in any case is the law of the State." Because the statements were made in Virginia, Virginia law applies. Therefore, the district court properly looked to state law in determining whether the statements were, in fact, defamatory.

The district court, however, also relied on *Milkovich* for the standard to determine whether Wilks' comments were statements of opinion or fact. In *Milkovich*, the Court was asked to determine whether a newspaper article implying that a local high school football coach lied under oath in a judicial proceeding was a constitutionally protected opinion. The Court, reversing the Ohio State Supreme Court, declared that it was "not persuaded that, ... an additional separate constitutional privilege for 'opinion' [was] required to ensure the freedom of expression guaranteed by the First Amendment." *Milkovich*, 497 U.S. at ——, 110 S.Ct. at 2707. After careful review of First Amendment protections for allegedly defamatory statements, we find it unnecessary to decide the federal constitutional issue of whether the First Amendment protects a private plaintiff against a non-media defendant on issues of private matters. Because we find that the statements are not defamatory under state law, we need not reach the federal constitutional question. *In re Snyder*, 472 U.S. 634, 642, 105 S.Ct. 2874, 2879, 86 L.Ed.2d 504 (1985) (remarking that constitutional issues are avoided when resolution of issue is not necessary for disposition of case). Therefore, we consider this issue on purely state law grounds.

The Virginia state constitution expressly provides "that the freedoms of speech and of the press are among the great bulwarks of liberty" and protects the rights of the citizens to "freely speak, write, and publish his sentiments on all subjects, being responsible for the abuse of that right ..." Va. Const. Art. I, § 12. Moreover, Virginia statutory law provides that "all words shall be actionable which from their usual construction and common acceptance are construed as insults and tend to violence and breach of the peace." Va.Code Ann. § 8.01–45 (Michie 1984). This court has interpreted Virginia statutory law to be co-extensive with a common law action for defamation. *Potomac Valve & Fitting Inc. v. Crawford Fitting Co.*, 829 F.2d 1280, 1284 (4th Cir.1987). Moreover, the plaintiff bears the burden of proving that the "manner and circumstances in which the words were uttered conveyed the meaning placed upon them by him." *Taylor v. Grace*, 166 Va. 138, 184 S.E. 211, 213 (1936).

In *Chaves*, the Virginia Supreme Court addressed the issue of whether certain statements were defamatory. There, an architect brought suit against a competitor alleging that a letter written by the competitor to the city council characterized the architect as inexperienced and maintained he charged excessive fees. The court found that "a charge of inexperience is in its nature a relative statement, depending for its import largely upon the speaker's viewpoint," and that the listener "could only regard it as a relative statement of opinion grounded upon the speaker's obvious bias, and having no tendency to defame." *Chaves*, 335 S.E.2d at 101. The court expressly noted that "pure expressions of opinion, not amounting to 'fighting words' cannot form the basis of an action for defamation." *Id.* Moreover, the court determined that "it is for the court, not the

jury to determine as a matter of law whether an allegedly libellous statement is one of fact or one of opinion." *Id.* at 102.

■■■ In determining whether a statement expresses an actual fact about an individual such that the comment is actionable or whether the comment is a nonactionable opinion, the court may consider the type of language used, the meaning of the statement in context, whether the statement is verifiable, and the broader social circumstances in which the statement was made. *Potomac Valve & Fitting*, 829 F.2d at 1287. In viewing the conversation in context, the court notes that Wilks made the statements during a routine visit to Brown's. Wilks did not call on Brown's with the intention of disparaging Lapkoff in any way, nor was he aware that Lapkoff was working at Brown's until his meeting with Johnston. Furthermore, Johnston asked Wilks for his opinion and Wilks responded in a calm, even-tempered fashion. Wilks did not seek Johnston out nor did he offer the statements unsolicited. Moreover, Wilks first spoke of Lapkoff in a favorable light. Wilks told Johnston that Lapkoff was very good at motivating sales persons and closing hard deals. In light of the general tenor of the conversation, the court will analyze each specific statement.

With regard to the first allegedly defamatory remark that "personally, I [Wilks] wouldn't trust him as far as I can throw him," the court concludes that this comment is clearly Wilks' opinion because it is a relative statement completely dependent on Wilks' obvious bias toward Lapkoff. Johnston could have only regarded it as an opinion and, by any standard, it is protected speech.

With regard to the second statement about the fraud problems at Anton Motors, the court notes that true facts cannot be the basis of a defamation action. *Massey v. Jones*, 182 Va. 200, 28 S.E.2d 623, 627 (1944). The evidence indicates, and it is undisputed, that some type of credit fraud was going on at Anton Motors. Therefore, this comment cannot be the source of a defamation action.

With regard to the third allegedly defamatory statement that if the sales manager condoned the behavior there was a problem and if he did not know of the behavior there was a problem, the court will address two alternative interpretations. First, Plaintiff argued before the district court that Wilks' comments to Johnston indicated that Lapkoff knew about the fraud and was involved. However, no reasonable jury could construe Wilks' first remark to mean that Lapkoff was involved in fraud. Wilks' comments were directed to Lapkoff's awareness of the fraud not his participation in it. Therefore, we find that summary judgment is appropriate under this interpretation of the statement.

The second interpretation of the statement suggests that Lapkoff *either* knew about the fraud, was not involved, but did nothing to stop it *or* Lapkoff did not know about the fraud and was not involved. Plaintiff's main contention on appeal is that this statement imputes condonation or negligence, which is a disputed question of fact and not proper for disposition by summary judgment.* However, by couching the statement in the disjunctive, that is either/or, no reasonable jury could interpret the statement as expressing an established fact about Lapkoff.

Moreover, there is no question that Wilks was correct in at least half of what he said. Lapkoff acknowledged to Johnston that he was aware of the credit fraud activity at Anton Motors (App. at 101). As to Wilks' belief that Lapkoff's inaction in the face of fraudulent activity created some type of "problem," presumably that Lapkoff was a poor sales manager, that position can only be construed as a relative statement, again

---

* Defendant contends that the issues of condonation and negligence are new theories which were neither presented to, nor ruled upon by the district court. We disagree. Although condonation and negligence by imputation were not specifically pleaded in the complaint, we note that the district court had all three allegedly defamatory statements before it, including the third statement which is the thrust of Plaintiff's condonation and imputation argument. As this statement was before the district court and discussed by the court in its Memorandum Opinion, Plaintiff may raise it on appeal.

dependant on Wilks' viewpoint that it was a problem. Therefore, we conclude that under the standard set out in *Chaves*, the statement is a non-actionable opinion and the district court properly granted summary judgment for Defendants.

### CONCLUSION

We find that Wilks' comments regarding Lapkoff are statements of opinion and non-actionable in defamation. Further, because we resolve this issue on state law grounds, we find it unnecessary to consider the federal constitutional question of whether the First Amendment protects a private plaintiff against a non-media defendant on issues of private matters. Therefore, for the foregoing reasons, the opinion of the district court is affirmed.

AFFIRMED.