**William M. BILLS, Plaintiff,**

v.

**SUNSHINE WIRELESS COMPANY, INC., Defendant.**

Action No. 2:92cv380.

United States District Court,
E.D. Virginia,
Norfolk Division.

Jan. 6, 1993.

---

Robert John Haddad, Shuttleworth, Ruloff, Giordano & Kahle, Virginia Beach, VA, for William M. Bills.

William Kennedy Keane, Joan Blanche Tucker, Winston & Strawn, Washington, DC, for Sunshine Wireless Co., Inc.

**OPINION AND FINAL ORDER**

DOUMAR, District Judge.

This action arises under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621–634. Plaintiff William M. Bills is a former employee of the Sunshine Wireless Company, which owns the radio station that Bills worked for as a morning announcer. Plaintiff alleges that he was discharged by the defendant in October, 1991, based upon his age in violation of the ADEA. In addition, plaintiff alleges that defendant defamed him based on statements that agents of defendant made to The *Virginia–Pilot/Ledger Star.* Defendant Sunshine Wireless Company has moved for summary judgment. This court GRANTS the motion and directs the clerk to enter judgment for the defendant for the reasons set forth herein.

### I. Statement of Facts

In October, 1991, plaintiff William Bills was fired from his position as a morning announcer on WFOG. WFOG is a radio station in the Tidewater area that caters to a listening age group of 35–64. In January, 1991, the station concluded that because of decreasing revenues and market shares, WFOG would need to adjust its music to attract a larger audience. The Station decided to alter its music playlist to include more vocal selections and fewer instrumentals, to change the promotional slogans for the station, and to change the way it referred to its weather forecast.

The Station also chose to focus on the performance of its announcers and to subject all announcers to increased scrutiny of their on-air performances. To notify the announcers of this change, on August 1, 1991, WFOG's Program Director, Mike Russell, submitted a memo to the staff explaining the changes occurring at the station. The memo informed all employees that because of the programming adjustments, all announcers would be placed on probation, and would in effect be re-qualifying for their positions. The memo also informed the announcers that on-air mistakes would not be tolerated, and

that all announcers would be expected to improve consistently their performances.

Furthermore, Russell prepared a "Critique Priority List" for William Bills, which identified the performance areas in which he needed improvement. The list informed Bills that he was to have positive energy on the air, that he was to eliminate "dead air," that he was to make the promotional slogans sound fresh, and that he was to sound excited about the music of WFOG. Approximately two months after Russell distributed the memo and furnished the critique list to Bills, he terminated Bills' employment at WFOG. Bills was replaced by an announcer who was several months shy of his 40th birthday.

Soon after Bills was fired, Cynthia Hanson wrote an article in *The Virginia–Pilot/Ledger Star* allegedly quoting Jerry Del Core, WFOG's manager. The article stated, "Del Core ... fired Bills because he'd failed to achieve some specific goals in terms of his on air sound. We wanted Bill to have a softer, more comfortable delivery."

## II. Analysis

Summary judgment under Rule 56 is appropriate only when the court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *Terry's Floor Fashions, Inc. v. Burlington Indus., Inc.*, 763 F.2d 604, 610 (4th Cir.1985). Summary judgment is not inappropriate in age discrimination cases just because such cases involve issues of intent and motive. Once a party has properly filed evidence supporting the motion for summary judgment, the nonmoving party may not rest upon mere allegations in the pleadings, but must counter the evidence produced by the defendants. *International Woodworkers v. Chesapeake Bay Plywood Co.*, 659 F.2d 1259, 1271 (4th Cir.1981).

### 1. Plaintiff's Age Discrimination Claim

In order to establish a cause of action under the ADEA, the plaintiff must demonstrate that "but for the employer's motive to discriminate against the plaintiff on the basis of age, the plaintiff would not have been discharged." *E.E.O.C. v. Clay Printing Co.*, 955 F.2d 936 (4th Cir.1992). This can be proven in one of two ways. First, the plaintiff may establish the employer's motive to discriminate under the ordinary standards of proof by direct or indirect evidence. In the alternative, the plaintiff may proceed under the judicially created scheme established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973), rearticulated in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981).

### a. Plaintiff's Claim Under Ordinary Standards of Proof

Under ordinary standards of proof, the plaintiff must produce direct evidence of a stated purpose to discriminate and/or circumstantial evidence of sufficient weight to demonstrate a genuine issue of material fact. *Goldberg v. B. Green and Co., Inc.*, 836 F.2d 845, 848 (4th Cir.1988). In this case, plaintiff has been unable to produce any evidence of age discrimination. Bills contends that because he was receiving good ratings in the listening market, the only reason that WFOG could have fired him is because of his age. However, plaintiff's bare opinion, without further evidence, is insufficient to withstand a motion for summary judgment. *Id.*

Bills also argues that WFOG was attempting target a younger segment of its general listening audience, specifically the 40–54 year-old listeners, to increase its ratings. However, Bills fails to present any evidence that the Station even considered his age when they fired him. Bills concedes that the usual means of lowering a Station's listening audience is to decrease the number of instrumentals being played on the Station and to increase the number of vocals, which was the strategy WFOG implemented. (Bills Dep. 94–95). However, Bills has submitted no evidence that the Station was also attempting

to attract a younger audience by hiring younger announcers. In fact, WFOG employed three other announcers over the age of 40 at the time of Bills' termination—one 49, one 51, and the third 59. Bills also concedes that it is difficult, if not impossible to tell someone's age by their voice on the radio, and that he does not believe that he sounds old. (*Id.* at 133–34).

Finally, Bills argues that because one of his duties as an announcer is to make public appearances, he believes that the Station wanted to send a younger announcer on such appearances to attract a younger audience. However, Bills admits that the station never hesitated to send him on public appearances, and he concedes that no one at WFOG ever said anything to him about any aspect of his physical appearance or his ability to make public appearances, other than one instance where Russell mentioned that he had failed to smile on television. (*Id.* at 140) In fact, Bills does not dispute that he made almost weekly public appearances throughout 1991 up until the time of his termination. (*Id.* at 48). In short, Bills has failed to show any direct or circumstantial evidence to raise a genuine issue of material fact that "but for" defendant's intent to discriminate on the basis of age, plaintiff would not have been terminated. *See Clay Printing Co.,* 955 F.2d at 941.

### b. The McDonnell Douglas Standard

Because it is difficult to prove discriminatory intent under ordinary principles of proof, courts allow plaintiffs to proceed under the judicially created scheme for Title VII cases, which was established by the Supreme Court case of *McDonnell Douglas Corp. v. Green.* Under this scheme, the plaintiff must establish a prima facie case, which in a discharge claim consists of four elements. Bills must demonstrate that: (1) he is a member of a protected class, (2) he was discharged, (3) at the time of discharge, he was performing at a satisfactory level, meeting his employer's legitimate expectations, and (4) following his discharge, he was replaced by a person outside the protected class. *Clay Printing Co.,* 955 F.2d at 941.

Once the plaintiff has established a prima facie case, the burden shifts to the defendant to proffer a "legitimate, nondiscriminatory reason for the employee's rejection." *Id.* (quoting *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093) "The employer is not required to prove absence of a discriminatory motive, but merely articulate some legitimate reason for its action." *E.E.O.C. v. Western Electric Co., Inc.,* 713 F.2d 1011, 1014 (4th Cir.1983). If the defendant is successful in carrying this burden, the plaintiff must demonstrate that the reasons proffered by the defendant were pretextual or unworthy of credence. *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095.

The court holds that Bills has not demonstrated that he was meeting his employer's expectations as required by the third prong of the test, and therefore, Bills has failed to establish a prima facie case under the *McDonnell Douglas* scheme. In fact, defendant provided uncontroverted evidence that the Station was unsatisfied with Bills' job performance. Defendant notes that Mike Russell, the Program Director, notified Bills that his on-air performance would be more closely scrutinized. In addition, defendant contends that Bills continuously made on-air mistakes despite Russell's warnings including: (1) failing to play properly the Station promotional messages; (2) forgetting the name of WFOG's new weather forecast and calling the forecast by the old, wrong name; (3) having "dead air" during his shift, which was caused by his failure to have the next song or commercial ready for air play; (4) failing to deliver properly the live written liners (slogans) for the Station; and (5) having a delivery that continued to be overly formal.

Furthermore, defendant contends that plaintiff had a poor attitude toward his job. In his affidavit, Mike Russell stated:

Along with performance deficiencies, Bills had an attitude problem. He seemed to lose his enthusiasm for his job, and simply went through the motions. He appeared to pay little attention to detail; he was not receptive to my efforts to improve his on-air technique and to assist him in meeting

the demands of the position; he frequently voiced an unwillingness to strive towards eliminating on-air mistakes and to adjust his performance to meet the Station's standards and objectives.

(Russell Aff. 2–3).

Bills admits to making all the mistakes defendant cited. (Bills Aff. 3–4). However, Bills argues that he was meeting his employer's expectations because his ratings were consistently good. Nevertheless, the issue is not whether plaintiff was performing satisfactorily, but whether his employer thought he was performing satisfactorily. "So long as age was not the basis for the company's decision . . . the company can make a decision to terminate, even if the decision is unwise." *Huhn v. Koehring Co.*, 718 F.2d 239, 243 (7th Cir.1983). Bills has not shown that he was performing to the satisfaction of his employer. To the contrary, not only does Bills admit to making the mistakes defendant cited, Bills concedes that Russell notified him that his on-air performance would be closely scrutinized, and he concedes that before his termination, Russell notified him that the Station was not happy with his on-air performance. (Bills Dep. 250).

However, even if Bills has proven a prima facie case, summary judgment is still warranted because Bills has failed to put forth any evidence showing that defendant's proffered reasons for terminating him were pretextual, and that age was a determining factor in the termination decision.

Defendant maintains that Bills was terminated because the Station was unsatisfied with his on-air performance and attitude. The only counter evidence that Bills has produced is his consistently good ratings among the 35–64 listening age group. Because Bills did have good ratings, it is possible that defendant made a poor business decision in choosing to fire him. However, courts do not sit as a super-personnel department that evaluates a company's business decisions. This court cannot grant relief for errors in business judgment. *McCoy v. WGN Television*, 758 F.Supp. 1231, 1237 (N.D.Ill.1990), *aff'd*, 957 F.2d 368 (7th Cir.1992) (citing *Mechnig v. Sears, Roebuck & Co.*, 864 F.2d 1359, 1365 (7th Cir.1988).

In sum, Bills has failed to satisfy the third prong of his prima facie case that he was meeting his employer's job expectations, and even if he had overcome that hurdle he has failed to show that defendant's proffered reasons for his termination were merely a pretext for age discrimination. Accordingly, this court GRANTS defendant's motion for summary judgment on the ADEA claim.

### 2. Plaintiff's Defamation Claim

Defendant also argues that the court should grant its motion for summary judgment on Bills' defamation claim. Defendant contends that Bills was fired because he failed to achieve on-air goals, and that the Station did want him to have a "softer, more comfortable delivery," and therefore, the statements made to the *Virginia–Pilot/Ledger Star* were in fact true.

■ True statements cannot be the basis for a defamation action. *Lapkoff v. Wilks*, 969 F.2d 78, 82 (4th Cir.1992). Furthermore, in this case Bills bears the burden to prove that the statements at issue were false. *See Philadelphia Newspapers v. Hepps*, 475 U.S. 767, 777, 106 S.Ct. 1558, 1564, 89 L.Ed.2d 783 (1986). Because it has been established above that Bills has failed to introduce any evidence to prove that his firing was not related to his on-air deficiencies, Bills has not shown that defendant's statements to the newspaper were false. Therefore, the court GRANTS defendant's motion for summary judgment on plaintiff's defamation claim.

### III. Conclusion

For the aforementioned reasons, the court GRANTS defendant's motion for summary judgment, and DISMISSES plaintiff's complaint with prejudice.

It is so ORDERED.