

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-26-2003

# McNulty v. Citadel Broadcasting

Precedential or Non-Precedential: Non-Precedential

Docket 01-3902

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"McNulty v. Citadel Broadcasting" (2003). *2003 Decisions.* Paper 790.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/790

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

Nos. 01-3902 and 01-4046

———————

ANTHONY A. MCNULTY

v.

CITADEL BROADCASTING COMPANY,
Appellant No. 01-3902

———————

ANTHONY A. MCNULTY,
Appellant No. 01-4046

v.

CITADEL BROADCASTING COMPANY

———————

Appeals from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 98-cv-01112)
District Court Judge: Honorable A. Richard Caputo

———————

Argued December 17, 2002
Before: SLOVITER, RENDELL and GREENBERG, <u>Circuit</u> <u>Judges</u>.

(Filed: February 26, 2003)

———————

John J. Meyers, Esq.    [ARGUED]
Eckert, Seamans, Cherin & Mellott
600 Grant Street, 44th Floor
Pittsburgh, PA  15219
    *Counsel for Appellant/Cross Appellee*
Joseph P. Dailey, Esq.    [ARGUED]

Dailey & Selznick
405 Lexington Avenue
Chrysler Building, 54th Floor
New York, NY 10174
*Counsel for Appellee/Cross Appellant*

---

OPINION OF THE COURT

---

RENDELL, <u>Circuit Judge</u>.

Anthony McNulty worked as a broadcaster at a radio station owned by Citadel Broadcasting Company ("Citadel") until 1998. The circumstances surrounding his termination led to McNulty's filing age discrimination and disparagement claims against Citadel. The age discrimination claims went to a jury, who found in favor of McNulty. The disparagement claims were disposed of on summary judgment for Citadel. Citadel now appeals the District Court's order denying its motion for judgment as a matter of law or in the alternative for a new trial on the age discrimination claims. McNulty appeals the District Court's grant of summary judgment for Citadel on his disparagement claims. We will affirm the District Court's denial of judgment as a matter of law on the age discrimination claims. However, because we find that testimony from several witnesses giving their views with respect to a promotional liner was improperly admitted and an improper jury instruction was given at the trial on McNulty's age discrimination claims, we

2

will reverse the District Court's denial of a new trial, and grant a new trial.[1]  Finally,

because we find that McNulty has failed to show any actual harm from Citadel's statements

surrounding his termination, we will affirm the District Court's grant of summary judgment

to Citadel on the disparagement claims.

## I. Jurisdiction and Standard of Review

The District Court had jurisdiction over McNulty's claims under 29 U.S.C. §

626(c)(1) (1998) and 29 U.S.C. § 1331 (1998).  We exercise jurisdiction over the District

Court's final orders under 28 U.S.C. § 1291 (2002).  We review the District Court's denial

of Citadel's motion for judgment as a matter of law de novo, Paolella v. Browning-Ferris,

Inc., 158 F.3d 183, 189 (3d Cir. 1989), and the District Court's denial of Citadel's motion

for a new trial for abuse of discretion, reviewing the Court's interpretation of law de novo.

Rotondo v. Keene Corp., 956 F.2d 436, 438 (3d Cir. 1992).  We review the District

Court's grant of summary judgment de novo.  Green Mach. Corp. v. Zurich-American Ins.

Group, 313 F.3d 837, 839 (3d Cir. 2002).  We apply the same standard to summary

judgment as the District Court, that is, whether there remain any genuine issues of material

fact such that a reasonable jury could return a verdict for McNulty.  Fed. R. Civ. P. 56(e).

## II. Background

---

[1]McNulty was awarded attorney's fees as the prevailing party; both parties appeal the amount.  McNulty also claims error regarding the submission of front pay to the jury. Because we will grant a new trial, McNulty is no longer the prevailing party.  We will therefore vacate the award.  In light of this disposition, the claims of error regarding the fee award and front pay are moot.

A complete understanding of the facts is helpful. Anthony McNulty worked as a broadcaster at radio station WARM in the Scranton-Wilkes Barre area from 1960 to 1998. During that time, McNulty held a number of on-air positions, including disc jockey, newscaster, talk show host, and public affairs announcer. In 1991 he became the host of the morning drive-time show. Prior to 1997, WARM was owned by Susquehanna Broadcasting Company and had a target audience of adults in the 35-to-65 age group. In 1997, WARM was sold to Citadel. At the time of the sale, the ratings and audience share for all WARM broadcasts were in decline.

Citadel management decided to target a younger demographic, the 25-54 age group. Citadel hired an independent consultant, Brian Jennings, to review programming and make recommendations on how to improve WARM's ratings with the new target audience. In August 1997, after listening to broadcast tapes, but prior to meeting with any broadcasters in person, Jennings prepared an evaluation. In the section in which he evaluated McNulty's morning show, Jennings stated,

> "The whole station sounds OLD, VERY OLD. It needs a complete makeover.
> [McNulty] will attract 65+, but very little else. I think his humor is old. . . .
> Terry doesn't sound old in vocal quality, but his manner and on-air
> persona/personality do sound very old."

In other sections in the memo, not related to McNulty's show, Jennings notes that the callers who like the shows are very old, and that other program hosts spend too much time talking about George Burns and other "old geezers." In summary, Jennings recommended a

4

drastic makeover, including bringing an "older staff" into the 90's.

On Jennings's recommendation, Citadel hired a new Program Director, Gregory Foster. Foster made a number of changes in McNulty's show, but was complimentary overall and never questioned McNulty's performance. In mid-February 1998, Foster told McNulty that his show was doing "fine."

In February 1998, Jennings returned to re-evaluate WARM's progress. Discussing the morning drive show, Jennings stated,

"Terry is still the question mark. He sounds like he's 62. He doesn't have a 25-54 mindset and it's difficult for him to relate to this demographic. Little old ladies love him. . . . We either need a younger host who is hungry to succeed, or investigate another option all together. I believe Don Imus would be killer in this market, and, I would encourage you to investigate this option."

In the same memo, Jennings evaluated two other on-air hosts, both aged 50, and concluded that they had improved.

At the end of February, McNulty met with Foster and William Betts, WARM's General Manager, and was told he was being taken off the air and that his show was being replaced by the Imus in the Morning show. At the meeting, McNulty was given three options, including a sales position. McNulty rejected these offers and told management that he would only consider broadcasting jobs at his previous salary and benefits level, that were comparable to the positions he had held over the preceding 20 years. WARM did not make

5

any further offers, and McNulty's employment was formally terminated in March 1998, when he was 61 years old.

Around the same time, WARM made a number of other changes in its line-up. For example, one broadcaster was taken off the mid-morning show and placed in the afternoon when his time slot was given over to a syndicated program, then later switched back to the morning show, a news-caster was taken off the morning news and placed on the afternoon news, and a sports announcer was taken off sports in the morning and put on sports later in the day. All of these broadcasters were younger than McNulty.

There was a good deal of publicity surrounding the changes at WARM. News of McNulty's termination appeared in a number of newspaper articles and on the local television news immediately thereafter. The news stories quoted Foster as explaining that WARM had sagging ratings and was targeting a younger audience. After McNulty's show was replaced by the Imus show, WARM played a series of promotions for the new show based on callers' comments. Some of these caller comments were positive about the changes on WARM and some were negative; a few directly referenced McNulty. During the morning time slot, WARM also played a short promotional announcement, called in the industry a "liner," that stated, "W.A.R.M. We're not just for shut-ins anymore." (the "shut-ins liner").

In April 1998, McNulty filed discrimination charges under the Age Discrimination in Employment Act ("ADEA") with the Equal Employment Opportunity Commission ("EEOC") and state charges under the Pennsylvania Human Relations Act ("PHRA") with

6

the Pennsylvania Human Rights Commission ("PHRC"). In July 1998, McNulty filed a claim in the District Court for the Middle District of Pennsylvania under the ADEA for age discrimination. McNulty also included a number of disparagement claims. He advised the PHRC that he had filed a federal claim but did not ask the state agency to take any action. In September 1998, the PHRC sent a form letter to McNulty stating that it had closed his file because he had commenced a civil suit, and that he was free to sue under the PHRA. In November 1998, McNulty added a state PHRA age discrimination claim to his federal suit.

Citadel moved for summary judgment on all counts, which was granted as to the disparagement claims but denied as to the age discrimination claims. At trial on the age discrimination claims, McNulty played the "shut-ins" liner and presented numerous listener witnesses who testified that they only heard the liner after McNulty had been fired, and that they believed the liner was offensive, referred to McNulty, and meant that he was too old to be on the radio.

In its instructions to the jury, the Court advised that in order for the jury to find age discrimination in a case such as this where there was circumstantial but not direct evidence of discrimination, it must find that "Mr. McNulty's age was a *motivating or determinative* cause of Citadel's decision to discharge or terminate him." (emphasis added). The Court went on, "Or to state the third requirement differently, that Mr. McNulty's age played a role in Citadel's decision-making process and had a determinative affect (sic) on the outcome of that process." The Court later reiterated, "The third of the requirements I just mentioned will be satisfied if Mr. McNulty proves that age was a motivating or determinative

7

consideration that made a differences (sic) in Citadel's decision." Finally, the Verdict Slip given to the jury asked, "Was Plaintiff's age a motivating or determinative factor in the employment actions which Defendant took with regard to Plaintiff?"

The jury returned a verdict for McNulty. Citadel renewed its motion for judgment as a matter of law and moved alternatively for a new trial. The District Court denied both motions.

### III. Discussion

#### A.      Age Discrimination Claims

Because we find that Citadel has not shown as a matter of law that McNulty's age discrimination claims have no merit, we will affirm the District Court's denial of judgment as a matter of law. We will, however, grant a new trial, as we find that the District Court erred in admitting the witness testimony on the effect of the "shut-ins" liner, that the Court's instructions on the requirements of a "pretext" case were erroneous, and that neither of these errors was harmless.

#### 1.  Judgment as a Matter of Law

Citadel has not shown that McNulty's claims of age discrimination fail as a matter of law. Although McNulty cannot show direct evidence of discrimination, the circumstantial evidence he presents is enough to allow a reasonable juror to find in his favor. While it is clear that making a decision to target a younger audience is not in itself age discrimination, see, e.g., DeLoach v. Infinity Broadcasting, 164 F.3d 398, 401 (7th Cir. 1999) (finding no age discrimination at radio station that changed from music-based

8

programming to a syndicated talk radio format to attract younger audience); <u>Bills v. Sunshine Wireless Co.</u>, 824 F. Supp. 60, 61 (E.D. Va. 1993), <u>aff'd in an unpublished opinion</u>, 1994 U.S. App. LEXIS 1190 (4th Cir. 1994) (holding that evidence a radio station was targeting a younger audience did not amount to evidence that it fired an announcer because of his age), we find that there were sufficient references to McNulty's age and an atmosphere of bias against the elderly that, while not direct evidence of discrimination, could support a jury verdict.

The ADEA prohibits an employer from discharging an employee "because of [his] age." 29 U.S.C. § 623(a)(1) (2002).  Liability depends on "whether the protected trait actually motivated the employer's decision." <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 141 (2000).  "That is, the plaintiff's age must have 'actually played a role in [the employer's decision-making] process and had a determinative influence on the outcome.'" <u>Id.</u> (quoting <u>Hazen Paper Co. v. Biggins</u>, 507 U.S. 604, 610 (1993)).  An ADEA plaintiff can meet his or her burden of proof by 1) presenting direct evidence of discrimination that meets the requirements of Justice O'Connor's controlling opinion in <u>Price Waterhouse v. Hopkins</u>, 490 U.S. 228 (1989) (where the employment action was allegedly motivated by a combination of legitimate and illegitimate motives), or 2) presenting indirect evidence of discrimination that satisfies the familiar three-step framework of <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973) (where plaintiff relies on the inferences that an be drawn from the prima facie case).  <u>See</u> <u>Fakete v. Aetna, Inc.</u>, 308 F.3d 335, 337-38 (3d Cir. 2002).  This case proceeded under the <u>McDonnell</u>

9

Douglas framework, also known as a "pretext" case.

In support of his argument that there is sufficient evidence to support the jury's verdict, McNulty contends that he introduced direct evidence of discrimination. Direct evidence means "evidence sufficient to allow the jury to find that the 'decision makers placed substantial negative reliance on [the plaintiff's age] in reaching their decision' to fire him." Fakete, 308 F.3d at 338 (quoting Connors v. Chrysler Fin. Corp., 160 F.3d 971, 976 (3d Cir. 1998)). "Such evidence 'leads not only to a ready logical inference of bias, but also to a rational presumption that the person expressing bias acted on it' when he made the challenged employment decision." Id. (quoting Starceski v. Westinghouse Elec. Corp., 54 F.3d 1089, 1097 (3d Cir. 1995)). Recently, in Fakete, we held that a statement by the person who was responsible for firing the plaintiff that he was "looking for younger single people" and that the plaintiff "wouldn't be happy [at Aetna] in the future," was sufficient to allow a reasonable jury to find that the plaintiff's age was more likely than not a determinative factor in the decision to fire him. Id.

There is simply no such evidence here. McNulty argues that he presented four pieces of direct evidence of age discrimination: 1) Jennings's memo recommending that Citadel hire a "younger host;" 2) the "shut-ins" liner; 3) a statement that Foster made to a newspaper saying that WARM was "targeting a younger audience;" and 4) that Foster reprimanded him for opposing a promotion referring to older listeners as "old biddies." However, as we have noted, changing a target audience does not in itself amount to age discrimination, and McNulty has not directly connected the statements he relies upon to his

10

termination; on their own, they do not lead to the rational presumption that any expressed bias was acted on.

McNulty has, however, presented sufficient circumstantial evidence to allow a reasonable jury to find in his favor. Because we review the evidence after a jury verdict, we do not concern ourselves with the McDonnell Douglas burden shifting analysis, but proceed to the ultimate issue of whether McNulty has proven by a preponderance of the evidence that age was a determinative factor in his termination. Billet v. Cigna Corp., 940 F.2d 812, 817 (3d Cir. 1991). See United States Postal Service Brd of Governors v. Aikens, 460 U.S. 711, 714 (1983) ("Because this case was fully tried on the merits, it is surprising to find the parties and the Court of Appeals still addressing the question of whether Aikens made out a prima facie case. We think that by framing the issue in these terms, they have unnecessarily evaded the ultimate question of discrimination *vel non*."). In so doing, however, our inquiry into the sufficiency of the evidence does not differ markedly from inquiring into whether McNulty has submitted evidence sufficient to establish the elements of a prima facie case and then sustained his burden of proving that Citadel's reasons were a mere pretext, see Bruno v. W.B. Saunders Co., 882 F.2d 760, 764 n.2 (3d Cir. 1989).

Taken in the light most favorable to McNulty, the evidence as outlined above is sufficient to convince a reasonable fact-finder that similarly situated younger employees were transferred rather than terminated, that age bias animated his termination, and that Citadel's explanation that McNulty was fired because of sagging ratings was a pretext.

11

McNulty presented evidence that younger broadcasters were transferred, rather than terminated, that he himself had been transferred among various positions during his tenure at the station, that his ratings were no worse than other broadcasters at WARM, and that there was an atmosphere of bias against older people. We will therefore affirm the Court's denial of judgment as a matter of law for Citadel.[2]

## 2. New Trial

Although we will not grant Citadel judgment as a matter of law, we will grant a new trial because we find that the erroneous admission of witness testimony about the meaning of the "shut-ins" liner and erroneous jury instructions prejudiced Citadel.

### a. The "shut-ins" liner

Citadel challenges the admission of the liner as well as the testimony about it. The District Court admitted the liner over Citadel's objections because it found the liner relevant under Federal Rule of Evidence 402 to the issue of age-based animus, even if it only referred to the station's audience and not McNulty. See Fed. R. Evid. 402. This was not an abuse of discretion. Further, the Court found that the liner was "at least as probative

---

[2]Citadel also argues that judgment as a matter of law should have been granted on McNulty's age discrimination claim under the PHRA because he did not exhaust his state administrative remedies before adding the claim to his federal claim. This argument is without merit, as McNulty did not file his state claim until after he had received a letter from the PHRC stating that it had closed his case and he was free to file a claim in court. As the District Court notes, McNulty never asked the PHRC to transfer or close his file, as was the case in the many state cases Citadel relies on. The PHRC apparently has a policy of closing cases when civil complaints are filed and allowing the complainant to pursue their action in court. Therefore, McNulty abided by the state exhaustion rules and was free to file his claim.

12

as it is prejudicial," and therefore was not barred by Rule 403, which decision was also not an abuse of discretion. See Fed. R. Evid. 403.

However, the Court allowed numerous WARM listeners to testify not only as to when they first heard the liner – relevant to the disputed factual issue of when the liner was first played – but also as to what they thought it meant. McNulty offered a parade of witnesses, eleven in number, who testified that they did not hear the liner until after McNulty was taken off the air, and also discussed their outrage at hearing the liner, and their belief that the liner meant WARM thought McNulty was too old and that he, like the audience, was a "shut-in."[3]

Under Rule 701, non-expert opinions are "limited to those opinions or inferences which are . . . (b) helpful to a clear understanding of the witness' testimony of the determination of a fact in issue." Fed. R. Evid. 701. An opinion is only helpful to the jury "if it aids or clarifies an issue that the jury would not otherwise be as competent to understand." Lauria v. N'tl RR Passenger Corp., 145 F.3d 593, 600 (3d Cir. 1998).

We agree with Citadel that the testimony as to the meaning of the liner was erroneously admitted. The listeners' testimony as to when they first heard the liner may have been relevant to a disputed factual issue, but their testimony as to what they thought

---

[3]Among the statements, one witness told the jury that he was "offended" by the liner because he was a listener and did not consider himself a shut-in, and that in his opinion WARM "made it sound like Mr. McNulty was an old man who is catering to an older market." (A486). Another witness stated that the liner "reflected poorly on Terry McNulty in that it cast him as a shut-in as well." (A445).

13

the liner meant and how it impacted them was improper. Lay witnesses are not needed to interpret clear conversation, see United States v. Dicker, 853 F.2d 1103, 1108-09 (3d Cir. 1988), especially when the opinion goes to the ultimate issue and witnesses' testimony distracts jurors "from their task of drawing an independent conclusion." Hester v. BIC Corp., 225 F.3d 178, 182, 184 (2d Cir. 2000) (finding inadmissible testimony by four witnesses who were not involved in decision-making process that employment decision "must have been" based on race). Here, the witnesses were not in a better position to form the opinion or make the inference, as the jury could easily understand what "not just for shut-ins anymore" meant. Furthermore, the witnesses' testimony went to the ultimate issue, whether WARM's action was motivated by age bias, and the witnesses usurped the jury's task of making an independent evaluation of the evidence.

This erroneous admission was not harmless. See Advanced Medical, Inc. v. Arden Medical Sys., Inc., 955 F.2d 188, 199 (3d Cir. 1992) (error is only harmless if it is "highly probable" that the error did not contribute to the judgment). Given that the evidence of age discrimination was entirely circumstantial, and the overall evidence presented a close case, it is probable that the jury, believing the witnesses' views were to be considered by them as proof, relied on them, in lieu of, or at least in formation of, their own opinion regarding a key aspect of McNulty's case. Because Citadel was prejudiced by the erroneously admitted listeners' testimony, we will grant a new trial.

### b. The jury instructions

We will also grant a new trial on the basis of the District Court's erroneous jury

14

instructions. The Court instructed the jury that age must have been a "motivating or determinative" factor in McNulty's termination. A jury instruction must properly apprise the jury of the law, when taken as a whole. <u>Limbach Co. v. Sheet Metal Workers Int'l Ass'n</u>, 949 F.2d 1241, 1259 n.15 (3d Cir. 1991). The parties agree that the standard for a circumstantial evidence case was set forth in <u>Watson v. Southeastern Penn. Trans. Auth.</u>, 207 F.3d 207, 215 (3d Cir. 2000). In <u>Watson</u>, we stated, "In 'pretext' cases . . . a jury must be charged that in order to find for the plaintiff, it must conclude that consideration of the impermissible factor was 'a determinative factor' in the adverse employment action." <u>Id.</u> This is in contrast to "mixed-motives" or "direct evidence" cases, in which age may be simply a "motivating" factor. <u>Id.</u>

The District Court conceded this was a *pretext case only*, not a mixed-motives case, and that <u>Watson</u> set forth the correct instruction. However, the Court first questioned whether <u>Watson</u> was good law, citing cases that *preceded* <u>Watson</u> approving in dicta the "motivating or determinative" instruction. The Court then admitted that the instruction was erroneous, but held that the error did not prejudice Citadel because of the curative instruction, which "virtually defined the challenged formulation to mean what <u>Watson</u> mandated." Further, the Court found that the verdict form was also harmless, even though it did not contain a correction, "since the jury fills out the verdict form in accordance with the court's instructions."

We find that the erroneous instructions were not harmless. <u>Watson</u> clearly requires a jury to be charged with finding that age was a "determinative" factor. While there may be

15

several motivating factors that could cause an employer to take certain actions, it is possible that a jury would find none to be *determinative.* Here, the "either/or" aspect rendered the Court's instruction harmful. The Court's single clarification did not do enough to correct the erroneous impression in the jury's mind that it could find age to be simply a "motivating" factor. First, the Court *repeated* the "motivating or determinative" factor instruction later in the instruction without a clarification. Then, the verdict slip, which was the only written form of the instruction that the jury had when making its deliberations, contained no correction. Simply asserting that the jury fills out the verdict slip in accordance with jury instructions is not enough to cure this defect. Given the entirely circumstantial evidence of age discrimination here, and McNulty's emphasis on the "shut-ins" liner and other age-biased comments regarding the audience, a jury could have found age to be a motivating but *not determinative* factor. Because the jury may have found Citadel liable on an incorrect legal basis, we will grant a new trial.

## B. Disparagement Claims

Aside from his age discrimination claims, McNulty also claims that Citadel tarnished his reputation after his termination by creating a materially false impression that he only appealed to the elderly. Because McNulty has not proven actual harm from the statements made by Citadel, we will affirm the District Court's grant of summary judgment. Although McNulty addresses his four disparagement claims together, we will dispose of them separately.

### 1. Lanham Act – False Advertising

16

McNulty first claims that Citadel violated the Lanham Act. A claim for false advertising under Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a) (1998), requires proof that: 1) the defendant has made false or misleading statements regarding a product; 2) there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; 3) the deception is material in that it is likely to influence purchasing decisions; 4) the advertised goods traveled in interstate commerce; and 5) there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc. Johnson & Johnson-Merck Consumer Pharmaceuticals Co. v. Rhone-Poulenc Rorer Pharm., Inc., 19 F.3d 125, 129 (3d Cir. 1994). Lanham Act claims require proof of a nexus between the false statement and a third party's decision not to do business with the plaintiff. Synygy, Inc. v. Scott-Levin, Inc., 51 F. Supp. 2d 570, 577 (E.D. Pa. 1999), aff'd in a non-precedential opinion, 229 F.3d 1139 (3d Cir 2000).

McNulty has not shown a nexus between the statements and his later inability to get a job in broadcasting. Furthermore, he has offered no proof that Citadel's statements had a tendency to deceive "a substantial portion of the intended audience." In Johnson-Merck, we examined exhaustive consumer surveys to determine whether they were objective and provided enough proof that a substantial portion of the intended audience, not just a select few individuals, had been misled. Johnson-Merck, 19 F.3d at 133-36. McNulty has not presented any such evidence. We will therefore affirm summary judgment.

## 2. Tortious Interference

McNulty next claims tortious interference with prospective contractual relations. In

17

Pennsylvania, a claim for tortious interference requires proof of: 1) a reasonable probability of a contract; 2) purpose or intent to harm plaintiff by preventing the relationship from occurring; 3) absence of privilege or justification on the part of the defendant; and 4) occurrence of actual damage. Advent Sys. Ltd v. Unisys Corp., 925 F.2d 670, 673 (3d Cir. 1991); KBT Corp. v. Ceridian Corp., 966 F. Supp. 369, 372 (E.D. Pa. 1997).

The District Court found that McNulty had not proven actual damages or the existence of a prospective contractual relationship, but simply implied that his reputation had been damaged. We agree that McNulty has not proven there was a link between the statements and his inability to get a broadcasting job, and will therefore affirm summary judgment.

### 3. Commercial Disparagement

McNulty also claims commercial disparagement. In Pennsylvania, a claim for commercial disparagement requires proof that: 1) the statement is false; 2) the publisher either intends the publication to cause pecuniary loss or reasonably should recognize that publication will result in pecuniary loss; 3) pecuniary loss does in fact result; and 4) the publisher either knows that the statement is false or acts in reckless disregard of its truth or falsity. Neurotron Inc. v. Medical Serv. Assoc. of Pa., Inc., 254 F.3d 444, (3d Cir. 2001). In Neurotron, we examined Pennsylvania's rule regarding commercial disparagement. At the time, the Pennsylvania Supreme Court had not decided a trade libel case for over 25 years. The most recent case, Menefee v. Columbia Broadcasting Sys., Inc., 329 A.2d 216 (Pa. 1974), had been decided under the Restatement (First) of Torts, and did not require the

18

fourth falsity element. Since then, the Restatement (Second) of Torts has added the requirement. In Neurotron, we held that the Pennsylvania Supreme Court would follow the Restatement (Second), not Menefee, and would require evidence that the publisher was reckless with regard to the falsity of its statement. Neurotron, 254 F.3d at 449.

McNulty relies heavily on Menefee because the facts in that case are strikingly similar, involving a radio broadcaster fired because of low ratings, suing over press accounts of his departure. Menefee, 329 A.2d at 217. Although we decided Neurotron a year after the District Court's summary judgment decision, the District Court's decision was based on simply interpreting what Pennsylvania law was at the time, and the Superior Court had already predicted that the Pennsylvania Supreme Court would follow the Restatement (Second), as had several other federal district courts. See Neurotron, 254 F.3d at 448-49. McNulty's reliance on Menefee now is therefore misplaced. McNulty has not even addressed, let alone proven, that Citadel either knew or was reckless to the possibility that the statements it made were false. Furthermore, as with the previous two claims, he has not proven any pecuniary loss arising from the statements. Therefore, we will affirm summary judgment.

### 4. Defamation

Finally, McNulty claims defamation. In Pennsylvania, a plaintiff seeking to recover for defamation bears the burden of proving: 1) the defamatory character of the communication; 2) its publication by the defendant; 3) its application to the plaintiff; 4) the understanding by the recipient of its defamatory meaning; 5) the understanding by the

19

recipient of it as intended to be applied to the plaintiff; 6) special harm resulting to the plaintiff from its publication; and 7) abuse of a conditionally privileged occasion. 42 Pa. C.S. § 8343(a) (1998).

A plaintiff need not prove special harm when a statement is defamatory per se. Synygy, 51 F. Supp. 2d at 580. Words imputing "business misconduct" are defamatory per se if they are of the type "that would be particularly harmful to an individual engaged in the plaintiff's business or profession." Id. However, even with defamation per se, the plaintiff must prove "general damages," that is "that one's reputation was actually affected by the slander or that one suffered personal humiliation." Id. at 581.

As with the three other disparagement claims, McNulty has failed to prove damages. Even assuming that Citadel's statements imputed "business misconduct," McNulty has not proven that his reputation was actually affected. Although he has presented a number of affidavits from industry professionals stating generally that statements impugning a broadcaster's ability to appeal to a younger audience are the "kiss of death" in the business, he has not shown that his reputation was actually damaged in anyone's eyes, or that Citadel's statements were responsible for his inability to find further employment as a broadcaster. We will therefore affirm summary judgment.

### IV. Conclusion

Because we find that McNulty has presented enough evidence to allow a reasonable juror to find in his favor on his age discrimination claims, but that the District Court erroneously admitted prejudicial evidence and erroneously instructed the jury, we will

20

affirm the Court's order denying judgment as a matter of law in favor of Citadel but reverse the Court's order denying a new trial.  We will therefore grant a new trial on the age discrimination claims.  However, McNulty has failed to prove actual harm from Citadel's post-termination statements, therefore we will affirm the District Court's grant of summary judgment in favor of Citadel on the disparagement claims.

_____

TO THE CLERK OF COURT:

Please file the foregoing opinion.

  /s/ Marjorie O. Rendell  
Circuit Judge
